Good morning. We have six cases on the calendar this morning. A government employee case, a patent case, two trade cases, and two veterans' cases, which are pro se and are being submitted on the briefs, so they won't be argued. Our first case is Joseph Gargiulo v. Department of Homeland Security, 2012-3157. Mr. Berger. Thank you very much, and good morning, Your Honors. Here, where an indefinite suspension of a tenured civil servant is predicated solely on the fact of an earlier summary suspension of a security clearance, we agree with the Board's decision that due process requires that an employee like Mr. Gargiulo has an opportunity to respond to a person with authority to change the outcome of that security clearance determination in either the security clearance proceeding or the indefinite suspension proceeding prior to any deprivation of patent. The mistake that we assign to the Court here by the Board... I think you're assigning it to the Board, not to us. Right. Sorry. The mistake that we argue here is that the Board's conclusion that Mr. Gargiulo was, in fact, provided with that meaningful opportunity on or before February 9th, 2010, when the agency issued its indefinite suspension... That is the date at which his... 2000... Yeah, February... 2009. 2010-09 was the date in which his suspension took effect, correct? He stopped receiving pay? Correct. Prior to that, he had been notified, at least at the earliest, in late August of 2008, going back many years, that his security clearance was summarily suspended on August 1st of 2008, without notice, without any opportunity to be heard. It was summarily suspended. Well, let me ask you about the... I mean, the notice, there was a, as these things go, a fairly detailed description of the reasons for the suspension of his security clearance, described as personal conduct and sexual behavior, and several paragraphs of description. And then an offer of an opportunity to reply, which you responded to in October of 2008 with a letter saying that you waived your right to oral reply, but then you responded in a three-page letter to the various points that were raised. Why didn't this satisfy the opportunity to respond to the reasons for the security clearance suspension? Sure. For two reasons. One, the deciding official in that indefinite suspension case based... had only authority, the only authority that that gentleman had was to ascertain the fact of the earlier summary suspension. If that condition was met, he had no authority to determine the merits of that earlier security clearance determination. And secondly, Mr. Gargiulo did not have, nor was he entitled to, any materials relied upon to support that earlier suspension of the security clearance. Where do you obtain... from what do you derive the right that you assert to have some form of, I call it discovery, the underlying materials, as opposed to notice of the charges, which you did? Yes. A lot of your brief is directed at the delay in providing the underlying materials. Where does that constitutionally-based right come from, in your view? Both the two Supreme Court decisions, I believe, Matthews v. Eldridge, as well as the Homer case, where they articulate that tripartite factor. The first factor is, well, what is the private interest affected? Here we have a deprivation of pay. That's a protected property interest. Of course. I mean, I understand what Matthews and his progeny say about the circumstances in which, of rights and interests. But I'm looking for authority that specifically addresses the purported right to have full discovery, as opposed to simply notice of charges and an opportunity to respond to charges. In other words, you were told, here are the reasons that his security clearance has been suspended. And you could have come in and said, that wasn't me. You've got the wrong guy. Or, that isn't any reason to suspend somebody. What is the constitutionally-based reason that you had a right to get this complete set of the underlying material? I understand. It's all rooted, the entire bundle of that right, those rights are rooted in that second Homer factor. What is the risk of an erroneous deprivation to the procedures that were available to Mr. Gargiulo? So we have to define, what were the actual procedures available to him prior to his loss of his pay? Let me ask you a question this way, to get to the brass tacks here that I'm looking for. Do you have any authority for the proposition that that factor, the second factor, is not satisfied in a case in which you have notice of the charges, but you do not have discovery of the underlying material? Yes, because in this case, as I said earlier, the deciding official… Authority. What case authority do you have? Do you have any case to concite to us? There is no precise case on point in this case. This is a case without precedent. We know this court, as earlier in the Chaney case, decided a similar case, but that was under the statutory protections at Title V, at 7513. And in that earlier case, the employee did not get sufficient notice. He had no materials before he had to argue his case before deciding official. And this court held that he was denied due process. Due process? Well, he was denied the statutory protection under Title V. But pointedly not due process. The court was careful to say that this is a purely statutory and non-constitutional right. I understand that, but I believe this court has also held that those statutory rights are equivalent to due process rights. It's notice and an opportunity to be heard. All we're asking for is a meaningful opportunity to be heard. So, if we look at the Chaney case and we look at the second factor, if the deciding official in my indefinite suspension case has the authority only to ascertain whether, in fact, that security clearance has been suspended, my guy doesn't have a meaningful opportunity to make a pitch to him. And secondly, if he doesn't have any of the materials, then how do I know that the materials that are relied upon by the agency are not rife with gossip, innuendo, hearsay statements? These witnesses are not subject to cross-examination. We have no information other than the mere notice, and I don't have enough materials to make a pitch, and I don't even have a deciding official in a position to alter the outcome. You got materials on May 22, 2009. What did you get? I received the entire file relied upon by the agency to suspend the security clearance. However, by May of 2009, Mr. Gargiulo's pay had already been suspended three months earlier, February of 2009. The DHA still had a decision to make. It hadn't made it, right? The security clearance component? Right. That's correct. They didn't make their decision until, I believe, November of 2009. How about July? In June and July, my guy had an opportunity to argue the merits of his security clearance case to the security clearance component, but during all that period of time, he's without pay since February of 2009. And my claim is that the agency should have left him on some sort of administrative leave status with pay or restricted duty status until he had a final opportunity, as he finally did, to argue his case before the security clearance people. And so the remedy would be back pay for the three months between the two periods? Yeah, the remedy here would be back pay. Is that what you're asking for in this case, that three-month period of back pay? Excuse me? Is that the remedy you're asking for in this case? No, actually it would be back pay from February 2009 to the time he was ultimately removed, because once the final revocation was decided, subsequent to that, the agency then removed him from his employment. Let me ask you a question about the assertion that there was no one in a position to speak to the security clearance issue with respect to his right to respond to the reasons for the security clearance. As I read the papers, and correct me if this is wrong, the security clearance issue, which came up first in the August 1st, and then August 28th, and then ultimately November, I guess, 13th or 18th letters, were from the personnel security division from the associate director. Isn't this exactly the person who has authority over the security clearance issues? Yes. Okay, and those letters all say that you have a right to reply to the charges, and they will be considered, correct? Yes. Okay, so what's missing? What's missing is… He didn't have a chance to reply to the person who had authority over the security clearance. Before my guy was deprived of pay. No, no, this all occurred before 2009. So, on November 13th of 2008, he gets the operative notice to revoke. On November 28th of 2008, on Appellant's brief appendix 38, he asks for the materials. He doesn't get them until May. Okay, but you're back to the materials. Well… You had two points. One was the materials, the other was a person with no authority to speak to the security clearance. My submission to you is, what is wrong with having Ms. Greenlee be the person who would receive a reply? Since that looked to me, at least, like the person who would be able to speak to the security clearance. I agree with you, except that in the absence of the materials… So, you're back to the materials. I'm back to the materials. That's your whole argument, isn't it? It's not meaningful. Okay. That's the bottom line. It is not meaningful. Let me ask you one other question. Now, the distinction which you alluded to before between the statutory rights and the constitutional rights, we have stated in Cheney v. Alston, as you know, that you have 7513 rights with respect to information that pertains to the security clearance. What do you see as the difference between what we have said, statutory rights, and what the board is saying you have as a constitutional matter, and what you think you should have that the board didn't give you as a constitutional matter? So, there are three different categories. I don't see a qualitative difference between the statutory procedural rights and the minimal due process guaranteed by the Constitution, which both are rooted with notice and a meaningful opportunity to be heard at a meaningful time. That's what I see, and I don't see a qualitative difference between the two. I see the board's decision was correct up to a point in articulating that in the context of a proceeding like this, that before an employee is deprived of his pay or her pay, that the employee be given an opportunity to make his or her pitch in a meaningful way before some authority who has the authority to alter the outcome, but also to have all the materials relied upon so that the response is meaningful. How can we avoid and minimize an erroneous deprivation without those materials, without looking at all that innuendo and gossip and hearsay statements? Maybe it's accurate, maybe it's not. But I think that before we deprive someone of pay, the employee should have an opportunity to tell his or her side of the story. Mr. Berger, you wanted to retain some rebuttal time. Thank you. We'll give you three minutes for rebuttal. Thank you, Mr. Chairman. Ms. Kidmiller. Thank you, and may it please the Court. Mr. Gargiulo paints this as a case without precedent, but this Court's precedent in this area is clearly established. Beginning with the Supreme Court's decision in Egan, and this Court's precedent applying and interpreting Egan for the past 25 years makes clear that in this context, Congress codified employees' due process rights in the Civil Service Reform Act. Employees are entitled in these situations to the procedural protections of 7513, in this case the mirroring provisions of the FAA's particular personnel management system, as well as the procedural protections, compliance with the procedural protections that an agency may have in place in addition to the statute. Can I ask you, is there a claim in this case, other than a due process claim, that is, and I probably should have asked counsel for the other side, is there a claim that on the assumption that there is no property interest that triggered due process at all, nevertheless his statutory or 7513 rights, or their equivalent here, were violated? No, Your Honor, and this is an important point. The administrative judge here found, and this is at page 16 of the Respondent's Opinion Appendix, that the agency complied with all of the procedural protections of both 7513 and its own regulations in this case. The full board decision did not disturb that finding, and we urge this Court to affirm the decision of the MSPB on that basis, finding that Mr. Gargiulo received all of the procedural protections to which he was entitled. It's not necessary for this Court, and under principles of constitutional avoidance, the Court should not go on to reach this bigger picture due process issue. Well, if that's the claim he's making, we can't just say, go away. Yes, Your Honor, that's true. But again, we urge this Court to affirm on what in many ways is a simple case, whether the agency complied with 7513 and its own procedures. Maybe I'm just confused. The question I asked you and I thought the answer you gave me was that he does not claim in this court that his 7513 rights were violated. That's right, Your Honor. So we don't have that issue. The only issue we have is Worgen's due process rights violated. Yes, although ultimately this Court is looking at whether it should affirm the ultimate outcome of the board's decision, which was upholding the indefinite suspension, and we are urging the Court to do so on alternative grounds here, on the statutory regulatory basis. You take issue with the board's constitutional analysis, even though you don't take issue with the conclusion that they reached, which was there was no constitutional violation. What do you perceive as the difference in substance between what we have said in Cheney v. King v. Olson, that 7513 gives an employee in this kind of situation, versus what the board's constitutional analysis would give the employee, other than the fact that one is predicated on statute and the other on the Constitution? Well, here the board is mandating the agency to provide procedural protections that are not required by 7513. That's my question. What exact procedural protections is the board requiring that aren't already required by our decisions in Olson v. Cheney? The board's ruling that before an agency may take a personnel action, that the employee must either have had an opportunity to respond on the merits to the security clearance determination, and importantly, if I could just back up for one moment, we of course have two separate and distinct tracks here, the security clearance determination, in which there is no protected property interest, and then the personnel action. The board here is saying that an agency may not take a personnel action unless the employee has first had an opportunity in the board's opinion to make some kind of meaningful response on the security clearance, or in the alternative, ensure that the deciding official on the personnel action has that authority. So here the board is imposing upon agencies, mandating certain procedural protections. What I think, maybe it's just asking the same question, but I thought that in Olson v. Cheney we said there were 7513 rights with respect to the clearance withdrawal or clearance suspension. So what has the board done under the rubric of due process here that isn't already required with respect to the clearance suspension withdrawal already required by 7513? Respectfully, Your Honor, we don't read Cheney and Olson as having said that 7513 somehow applies in the separate security clearance process. Cheney and Olson were focused on the notice requirements under 7513. Mr. Gargiulo's appeal, and now the board's new rule in this case, focused on the response. So a separate part of 7513. I thought there was something in there about, I don't know if it's the language, a meaningful opportunity to reply, a reasonable reply in 7513 discussed in Olson and Cheney. This court said in Cheney that the agency must provide an employee with sufficient notice of the reasons underlying the security clearance determination to permit a meaningful reply. This court, however, did not look at the particular individual who must receive the reply or what that person has to do. But a meaningful reply surely means something other than a reply to the janitor who cleans the building, right? I mean, it has to be a reply that has some potential if deemed meritorious to result in the change of decision. You'd certainly agree with that, wouldn't you? We agree that the deciding official on the personnel action needs to be somebody with authority over the personnel action. But Cheney, let me make sure, let me describe what I understand Cheney and Olson to say, and you tell me how your view of it is wrong. I understand them to say that it isn't enough under 7513 simply to say you get a chance before you're actually fired or suspended from your job to go in and say, I shouldn't be suspended, to which the response is, but you've lost your security clearance. And when you say, but the denial of security clearance was improper, the person says, not my job to decide that. That, according to Cheney and Olson, as I read them, say is not enough. You are entitled to notice of the reasons for your security clearance denial, either at the security clearance revocation stage or ultimately at the stage in which you're suspended or removed, a meaningful opportunity of notice and a meaningful opportunity to respond. Is that inconsistent with your reading of those cases? For the most part, no, but Cheney and Olson, again, were focused on that notice requirement. And the board here has worked an extension of Cheney. What I'm struggling with is, what is that extension? What I thought I heard you say in response to Judge Serrano was that the extension is they are allowing you to make a response, a reply, a meaningful reply, to the facts underlying the suspension of your security clearance and that that isn't permitted by Olson and Cheney. But I read Olson and Cheney as allowing you to respond to the facts underlying the denial or suspension of your security clearance. Am I wrong in reading Cheney and Olson that way? Well, it's not so much a matter of what the employee may be permitted in a particular agency to do, but what the board's authority is to mandate certain procedural protections with respect to the security clearance process. I want to bring you back to my question. Does Olson, does our decision, our line of cases, there are actually a couple more, our line of cases say that you have a right when they sit down and say, we're getting ready to terminate your employment. Why? Because you lost your security clearance. Do you have a right under those cases to say, what is the reason for my revocation of my security clearance and I want to tell somebody why that's wrong? Do you have those rights under those cases, yes or no? It really is a yes or no question. Yes to the first part, no to the second part. You don't have a right to say anything to someone who is in a position to influence that outcome. You have a right to respond to the proposed, well, on the personnel side, your right is to respond to the proposed adverse action, the indefinite suspension or the removal. And that does not necessarily mean what the board has required here, and that is that you be able to respond to an official who can change the security clearance determination. So you think a right of meaningful response includes a right of responding to an official who has no power, no authority at all? Yes. It's like talking to a door. It's not an empty process here because the meaningfulness in the personnel action is to ensure that the basics that this court set forth in cases like Hess, that your position actually requires a security clearance, that you've lost that clearance. Let me read your language out of, in this case, Cheney, and there's similar language in Hess. But here's what it says. The employee must be given enough information to enable him or her to make a meaningful response, and here's the critical language, to the agency's proposed suspension of the security clearance. They're not talking about a meaningful opportunity to respond to the firing in which all you get to do is to say, you know, well, was my security clearance suspended and is it a requirement of my job? That's a meaningful response to the reasons for the security clearance denial, right? Yes, but importantly, those cases did not go the additional step that the board has done here to mandate the particular authority of the deciding official, and in this court, Except that they refer to the opportunity to respond as meaningful. Under Cheney, this court found that it would be unfair, for example, for an employee to walk into the deciding, to have a supervisor come in and say, We're suspending your security clearance. We can't tell you why at all. We're not going to tell you any reason why, and we're removing you for that reason. And this court said, No, you need to give them more information than that. But at the same time, Cheney and Alston have to be balanced against this court's decisions in cases like Romero and Alston and Hess, which say clearly that this court can't review, much less permit the board to impose certain procedures with respect to security. Can I ask, putting completely to one side the clearance situation, just consider an ordinary suspension or termination of employment case, does 7513 require a meaningful opportunity to respond to somebody with the authority to decide whether to cancel the termination of employment or the demotion? Yes, although that right in some situations does look very much like what happens in these cases. So, for example, in cases where an employee has been charged with a felony and is being removed because of the reasonable belief that the felony has been committed, the deciding official can entertain arguments that the employee should remain on paid leave as opposed to unpaid leave, just the same as they can here in the security context. And there's no issue with that. In this particular case, as I understand it, Mr. Garciulo doesn't argue that there was some kind of remedial question aside from the suspension of the clearance, that he wanted a hearing on an issue about how the agency should react on the assumption that the clearance was no longer available. What we understand Mr. Garciulo to really be asking for here is due process in separate security clearance proceedings. I'm sorry, I got you off track. You were answering the more central question. I was saying that this is not a unique kind of scenario for a deciding official. In the felony example, the deciding official isn't going to have any authority to do anything about the criminal charges. And I see that I'm nearing time, but if the court would permit me to answer. You can finish the question. Another example would be basic licensing and other sort of qualifications that an employee might need, a driver's license, a law license, and whatnot. The deciding official doesn't have the authority to change those decisions, but can, as the deciding official can do here, consider whether transfer to another position might be feasible, whether paid leave is an option. It's not that the deciding official has no authority, but that EGAN draws this clear distinction between authority over the personnel action and the security clearance, and we believe that the board has crossed that line here and asked the court to affirm on alternate grounds. Thank you, Ms. Kidmiller. Mr. Berger, I'll give you three minutes to rattle. I just want to make it absolutely clear. When there's no claim that there is any procedural due process violation with the security clearance revocation process, that's a collateral proceeding, it went along. The issue here is the deprivation of a property interest in this indefinite suspension case, and the two coalesce. Counsel for the agency says... Can I just ask you the question I meant to ask you the first time I asked the government? You make only a due process argument. We make only a due process claim. That's it. The difference between due process and the statute, perhaps, is that the statute is subject to a harmful error analysis. If you deviate from the procedure, is it harmful, et cetera? My reading, due process dispenses with harmful error. This is just a due process claim. But the other difference may be that you actually don't have any due process rights at all with respect to procedures for the clearance. For a security clearance, that's correct. The due process rights attach to the indefinite suspension. That's what the issue is here. And we go back to the issue of a deprivation of a property right in the absence of a meaningful opportunity. We know that due process mandates that an employee have at least an explanation of the materials and the charges against him or her. That never happened in this case before money was taken away from this tenured employee. And that is what the due process right is. Quickly, in the other cases where counsel says that, well, a law license might have been revoked, that's a condition of employment. A driver's license might have been revoked, that's a condition of employment. Somebody might have been indicted for a felony, that's a condition of employment. In all those situations, we have collateral proceedings that give us some substantial assurance that there was some procedural protection. Just on that, in the Hawaii and Seattle or San Juan incidents, there were some sorts of procedures that led to the adverse actions by the two police departments, is that right? Your client knows. Yes, he does. But as of February 2009, we had no idea what the precise allegations were. We had a general idea. I was just focusing on your attempt to distinguish other situations where the underlying events came with some procedures. I assume that there were some procedures in San Juan and Hawaii. Is that wrong? I must confess, I do not know whether there are such procedures or he was charged with anything. I do know that in those other situations there are procedures in place for merit assessments to be made, and perhaps they give some substantial assurance before deprivation of property takes place. In this case, we have a completely summary suspension with no materials. My guy basically had no opportunity to make a meaningful pitch, other than the fact that perhaps he was a very good son to his mother, and that's it. That's good to hear. Thank you.